UNITED STATED BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  
    Fred A. Waycaster and  
    Sarah M. Waycaster,

        Debtors.
_____/

Chapter 13  
Case Number: 20-30529-jda  
Hon. Joel D. Applebaum

## OPINION DENYING CONFIRMATION OF DEBTORS' AMENDED PLAN

### Introduction

Debtors, Fred and Sarah Waycaster, seek to confirm their amended chapter 13 plan (the "Amended Plan") [Dkt. No. 37]. The Chapter 13 Trustee ("Trustee") objects to confirmation on the ground that the Plan fails to satisfy 11 U.S.C. § 1325(a)(4) because the "value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim" is *less* than the amount that unsecured creditors would otherwise receive in a chapter 7 liquidation (the "Best Interest of Creditors Test"). According to the Trustee, the Amended Plan improperly ignores equity in a home owned by Fred Waycaster totaling approximately $155,000. The home, located in South Carolina, is occupied by Fred Waycaster's in-laws, Raymond Strzalkowski and Elizabeth Inman. Debtors argue that, although the South Carolina home is titled in Fred Waycaster's name, he holds only bare legal title. Fred Waycaster's father-in-law, Raymond Strzalkowski, holds equitable title to the property under a resulting trust arising under South Carolina law. Accordingly, Debtors argue that the South Carolina home equity should not be counted in determining whether Debtors have satisfied the Best Interest of Creditors Test. For the reasons set forth below, the Trustee's objection is sustained, and confirmation of Debtors' Amended Plan is DENIED.

## Jurisdiction

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

## Factual Background

The facts in this matter are not in dispute.[1] Debtors filed their bankruptcy petition under chapter 13 of the Bankruptcy Code on February 28, 2020. Prior to filing bankruptcy, Fred Waycaster applied for a real estate loan for the purchase of a home located in Orangeburg, South Carolina. The purchase price of the home was $360,000. A down payment of $155,000 was put towards the price of the home resulting in a mortgage loan of $210,000. This down payment was provided by Raymond Strzalkowski pursuant to the terms of a Gift Letter dated January 16, 2019. The loan application was granted, and a closing occurred on January 18, 2019. Mr. Waycaster was not present at the closing and Ms. Inman, his mother-in-law, acted as his attorney in fact. The mortgage and loan note were recorded on the same day. All of the closing documents were prepared and executed in the name of Fred Waycaster as purchaser.

The South Carolina home is occupied by Mr. Strzalkowski and Ms. Inman. Debtors do not reside in South Carolina. Nothing in the record indicates their intention to relocate there. In addition to funding the down payment, the mortgage payments on the South Carolina property to date were apparently made by Mr. Strzalkowski. Mr. Strzalkowski would send a check made payable to Mr. Waycaster for the amount of the monthly payment. Mr. Waycaster would then deposit the check into his own account and make a corresponding payment to Plaza Home Mortgage, Inc., the mortgage lender ("Plaza"). Mr. Strzalkowski apparently missed several payments and Debtors' Amended Plan shows a pre-petition arrearage totaling $17,445. Debtor's

---

[1] At the hearing on the Trustee's objection to confirmation held on November 10, 2020, Debtors' counsel and Trustee's counsel agreed that there were no factual disputes, only disagreement as to the legal conclusions to be drawn from those facts.

counsel indicated that the need to stay collection action against Fred Waycaster and/or the South Carolina property was a significant reason for this bankruptcy filing.

As a result of the $155,000 down payment made pursuant to the terms of the Gift Letter, there is substantial equity in the South Carolina property that is at the heart of this dispute. Because Debtors' Amended Plan does not account for this equity, the Trustee argues that the Amended Plan fails to satisfy the Best Interest of Creditors Test. Debtors argue that any equity in the South Carolina property is shielded from Debtors' creditors by virtue of a resulting trust in favor of Raymond Strzalkowski. Accordingly, any equity should not be included in the Amended Plan, the Best Interest of Creditors Test is otherwise satisfied, and the Amended Plan should be confirmed. The Trustee and Debtors agree that this dispute is governed by South Carolina law.

## Legal Analysis

Under South Carolina law, "the general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf . . . ." *Anderson v. Architectural Glass Construction, Inc. (In re Pfister)*, 749 F.3d 294, 298 (4th Cir. 2014), quoting *Caulk v. Caulk*, 43 S.E.2d 600, 603 (S.C. 1947). But this presumption is just that – a presumption. A resulting trust is not presumed in the face of contrary intent. For example, "when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary, the presumption in such case is that the purchase was designed as a gift or advancement to the person to whom the conveyance is made." *In re Pfister*, 749 F.3d at 298. *See also Larisey v. Larisey*, 77 S.E. 129, 130 (S.C. 1913) ("[t]his presumption [of a resulting trust] cannot arise

when a contrary intent appears, since it is based on the absence of evidence of such contrary intent.") Where a presumption of a resulting trust does *not* arise, "the evidence to establish it must be clear, definite and convincing." *Green v. Green*, 117 S.E.2d 583, 586 (S.C. 1960). This heightened burden is in addition to the burden on plan proponents generally. *In re McDonald*, 437 B.R. 278, 283 (Bankr. S.D. Ohio 2010) ("The Debtors have the ultimate burden of proof to show the requirements of 11 U.S.C. § 1325 have been met.")

According to Debtors, because Fred Waycaster is the son-in-law of Raymond Strzalkowski and not one to whom "purchaser is under legal obligation to provide," *In re Pfister*, 749 F.3d at 298, the Court should not presume that the down payment was a gift and, therefore, a resulting trust should be found in favor of Mr. Strzalkowski. It is true that, under South Carolina law, no gift is presumed to a son-in-law or daughter-in-law. *Jocoy v. Jocoy*, 562 S.E.2d 674, 445 (S.C. Ct. App. 2002). However, the presumption against a resulting trust is not limited solely to where the payment was made on behalf of a person to whom "purchaser is under legal obligation to provide." As the *Larisey* court makes clear, "this presumption [of a resulting trust] cannot arise when a contrary intent appears, *since it is based on the absence of evidence of such contrary intent*." *Larisey v. Larisey*, 77 S.E.2d at 130 (emphasis added, internal citations omitted). Stated another way, when contrary intent appears, a resulting trust is not presumed.

Here, there is ample evidence of contrary intent. Starting with the most obvious, this entire transaction was documented to show that Mr. Waycaster purchased and is the owner of the property. *Hunt v. South Carolina Forestry Commission*, 595 S.E.2d 846, 848 (S.C. Ct. App. 2004) ("'Deeds are construed to determine the intent of the parties. To construe a deed, a court looks first at the language of the instrument because a court presumes it declares the intent of the parties.'") (internal citation omitted). To enable this purchase, Mr. Strzalkowski executed a gift

4

letter that Mr. Waycaster also signed. The Gift Letter specifically provided that "[n]o repayment of the gift is expected or implied in the form of cash or by future services of the recipient . . . ." [Dkt. No. 65-5]. More importantly, the Gift letter provided:

> WARNING: Our signatures above indicate that we fully understand that it is a Federal Crime punishable by fine, imprisonment, of both to knowingly make any false statement concerning any of the above facts as applicable under the provision of Title 18, United States Code, Section 1012 and 1014.

As noted above, in addition to the criminal implications of a deliberately misleading gift letter, all of the documents executed in connection with the purchase of the South Carolina property are consistent with the Gift Letter. These include, among others, the Settlement Statement showing the $155,000 as "gift funds received by Horger, Barnwell & Reid, LLP" [Dkt. No. 65-2], and Second Home Rider wherein Mr. Waycaster "covenants and agrees" that the South Carolina property will be his second home for his exclusive use and occupancy at all times and that the property will not be subject to any shared ownership arrangement or agreement that gives any other person any control over the occupancy or use of the Property. [Claim 7-1, p. 27 of 29]. A resulting trust in favor of Mr. Strzalkowski would, at a minimum, give him equitable ownership of and control over the Property contrary to the representations in the Second Home Rider. The existence of these carefully crafted documents, coupled with the warning that false statements by Mr. Strzalkowski and/or Mr. Waycaster is a "Federal Crime punishable by fine, imprisonment, or both," is ample evidence of contrary intent such that a presumption of resulting trust in favor of Mr. Strzalkowski does not arise. *Larisey v. Larisey*, 77 S.E.2d at 130.

Because no presumption arises in this case, it is incumbent on Debtors to establish a resulting trust in favor of Mr. Strzalkowski. To do this, Debtors must demonstrate by clear and convincing evidence that (i) Mr. Strzalkowski paid the down payment and any subsequent

payments (or committed to make such payments), (ii) with the intent to own the property, (iii) on the date of purchase. *In re Pfister*, 749 F.3d at 299. As the *Pfister* court emphasized, "[t]he last requirement is important. South Carolina trust law is clear that a resulting trust 'arises at the time . . . of [the] purchase, *or not at all*.' 'The trust must be coequal with the deed, and cannot arise from any subsequent transactions.' That a party pays for property and/or intends to own it at some point in time fails to establish a trust. For a resulting trust to arise, payment and intent must coincide with a deed's execution." *Id*. (emphasis in original, internal citations omitted). Moreover, even where the elements of a resulting trust are otherwise present, a resulting trust is defeated and cannot be enforced because of fraud or judicial estoppel. *Hayne Federal Credit Union v. Bailey*, 489 S.E.2d 472, 250-252 (S.C. 1997).

In this case, the Trustee acknowledges that the $155,000 down payment was paid by Raymond Strzalkowski. With respect to the remaining two elements necessary to establish a resulting trust, Mr. Strzalkowski's affidavit attests that he attempted to purchase the South Carolina property but that, although he could put down $155,000, he was not eligible for financing because of his bad credit. His son-in-law agreed to apply for the financing and once approved "the bank required me to execute a 'gift letter' to accompany my $155,000 down payment." [Dkt. No. 63] Moreover, Mr. Strzalkowski claims that he "understood that [he] would retain an interest in the property to the extent of [his] cash down payments and also to the extent any equity was created by the monthly mortgage payments that [he] would make based upon [his] agreement with Fred Waycaster." *Id*. The basis for his understanding and what exactly his interest is are unexplained. Mr. Waycaster's affidavit [Dkt. No. 62] is more or less consistent. According to Mr. Waycaster, he "agreed to finance the property in [his] own name and used Mr. Strzalkowski's $155,000.00 cash down payment to make the deal work and purchase the

6

property." Mr. Waycaster further attests that "this was done to assist Mr. Strzalkowski in purchasing the property and that he [Mr. Strzalkowski] would retain the equity in the property, make the monthly mortgage payments and use the property as his personal residence." *Id*. The funding of the down payment by Mr. Strzalkowski is also borne out by a copy of the Bank Transfer Request Authorization [Dkt. No. 60] showing the transfer of $155,000 from Mr. Strzalkowski's account at Bank of America to Horger Barnwell and Reid, LLP for use at the closing on the South Carolina property. Debtors also offer a single check from Mr. Strzalkowski to Fred Waycaster, putatively in the amount of the mortgage payment due to Plaza, as an example of how Debtor made the payments on South Carolina property on Mr. Strzalkowski's behalf. [Dkt. No. 61].

It is clear that Mr. Strzalkowski made the down payment, made some, but not all, of the mortgage payments, and was to continue making monthly mortgage payments. It is equally clear that the Gift Letter, mortgage, note, title and related closing documents show Fred Waycaster as purchaser. It appears that these were deliberately drafted to deceive Plaza so that, one day perhaps, Mr. Strzalkowski might own the property in his own name. What was not established by clear and convincing evidence is whether the parties intended that Mr. Strzalkowski would own the property on the date of purchase or at some later point in time. As the *Pfister* court emphasized, "[t]he last requirement is important. South Carolina trust law is clear that a resulting trust 'arises at the time . . . of [the] purchase, *or not at all* . . . . That a party pays for property and/or intends to own it at some point in time fails to establish a trust. For a resulting trust to arise, payment and intent must coincide with a deed's execution." *In re Pfister*, 749 F.3d at 299. *See In re Blackwell*, 1998 WL 2017334, *4 (Bankr. D.S.C. September 2, 1998) (denying resulting trust in home where no extrinsic evidence was presented which definitely indicated

7

father's intention at time of transfer to daughter). Here, there is no written agreement between Mr. Waycaster and Mr. Strzalkowski and their respective affidavits do not directly address this issue. Nor can this question be answered by reference to the circumstances surrounding this admittedly deceptive transaction. Given Mr. Strzalkowski's bad credit, it is questionable whether Mr. Waycaster intended to put his and his family's financial well-being at risk in the event Mr. Strzalkowski defaulted on this mortgage payment obligations without retaining an ownership interest in the property. Therefore, Debtors failed to carry their burden of establishing by clear and convincing evidence a resulting trust in favor of Mr. Strzalkowski. For the reasons set forth in the Trustee's objection, in the absence of a resulting trust, the Amended Plan fails to satisfy the Best Interest of Creditors Test.

Even were Debtors able to establish by clear and convincing evidence that everyone intended that Mr. Strzalkowski would own the property on the date of purchase, a resulting trust in favor of Mr. Strzalkowski cannot be enforced here because of fraud and estoppel.

"Fraud can defeat a resulting trust . . . ." *Hayne Federal Credit Union v. Bailey*, 489 S.E.2d at 250. Although Debtors argue that "there is no evidence that [Mr. Strzalkowski] put the property in Debtor's name for the purpose of defrauding creditors," [Dkt. No. 68, p. 3 of 5] that assertion is simply not true. Plaza is a creditor. [Claim 7-1]. In his affidavit, Mr. Strzalkowski admits that he was not eligible for financing because of bad credit and, because of this, he had Mr. Waycaster apply for a mortgage instead. The mortgage was approved because Mr. Waycaster had the ability to put $155,000 down on the property. Plaza required Mr. Strzalkowski and Mr. Waycaster to execute the Gift Letter to protect Plaza against a large competing repayment obligation. Mr. Waycaster and Mr. Strzalkowski each attest that the $155,000 was never intended to be a gift and that the very purpose of the Gift Letter was to

8

deceive the Bank into providing financing to Mr. Waycaster. In addition, Mr. Waycaster executed myriad documents furthering this deception by showing Mr. Waycaster as the purchaser. Notably, in the Second Home Rider, Mr. Waycaster "covenants and agrees" that the South Carolina property will be "*his second home for his exclusive use and occupancy at all times,*" that the property shall not be subject to "shared *ownership* arrangement," and no other person will have "*any control over the occupancy or use of the Property*." [Claim 7-1, p. 27 of 29, emphasis added]. Mr. Waycaster also signed this document knowing it was false precisely so that Plaza would be deceived into giving him the loan. In short, whatever motives Mr. Waycaster may have had in helping his father-in-law, this entire transaction was designed to deceive Plaza into giving Fred Waycaster a mortgage loan. Under these circumstances, the Court cannot enforce a resulting trust in favor of Mr. Strzalkowski.

A resulting trust in favor of Mr. Strzalkowski must also be denied because Debtors are equitably and judicially estopped from asserting that they do not hold any interest in the South Carolina property. Equitable estoppel "is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct." 28 Am. Jur. 2d *Estoppel and Waiver* §27. This doctrine is well-recognized in South Carolina. *See Strickland v. Strickland*, 650 S.E.2d 465 (S.C. 2007) (setting forth the essential elements of equitable estoppel under South Carolina law). As described above, this matter is replete with material misrepresentations by Debtor and Mr. Strzalkowski to Plaza, a secured creditor in this case. The parties intended Plaza to rely on these misrepresentations and Plaza obviously did so in making the loan. Indeed, nothing in the record indicates that Plaza or its successor is, as yet, aware that a resulting trust has been asserted or that equitable ownership of the property is being

claimed by someone other than Fred Waycaster. Debtors are, therefore, equitably estopped from asserting a resulting trust in favor of Mr. Strzalkowski.

Debtors are also judicially estopped from asserting a resulting trust in favor of Mr. Strzalkowski. Under South Carolina law, judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or related litigation. *Hayne Federal Credit Union v. Bailey*, 489 S.E.2d at 251. "The purpose or function of the doctrine is to protect the integrity of the judicial process or the integrity of courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries." *Id*. "The doctrine thus punishes those who take the truth-seeking function of the system lightly. When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him." *Id*. at 250. The *Haynes* court specifically found that judicial estoppel will defeat the assertion of a resulting trust.

Again, this case is replete with inconsistent and conflicting positions taken by Debtors. On Schedule A/B [Dkt. No. 21, p. 4], Debtors disclose ownership in the South Carolina property, but indicate "Parents Home Ray Strzalkowski & Beth Inman Sarahs [sic] parents purchased and paid $150,000 down on home – but balance financed by Fred due to parents credit issues." On Schedule D, Debtors' identify Dovenmuehle Mortgage, Inc., presumably the successor to Plaza, as a secured creditor with respect to the South Carolina property with the same notation. [Dkt. No. 21, p. 16]. Schedule I reflects monthly income of $1,900 simply as "parents [sic] contribution for mgage [sic] and arrearage." [Dkt. 21, p. 27]. Nothing in the Statement of Financial Affairs references Mr. Strzalkowski's alleged ownership of the South Carolina property.

10

20-30529-jda    Doc 71    Filed 11/18/20    Entered 11/18/20 13:49:23    Page 10 of 12

The ambiguous references in Debtors' Schedules A/B and I are contradicted by the very filing of this case and the terms of the Amended Plan. At the time of filing, the South Carolina property note was in default by approximately $17,445 and, according to Debtors' counsel, the impetus for this bankruptcy filing was to stay collection action against Fred Waycaster or the South Carolina property. By filing this case to protect the South Carolina property, Debtors tacitly or explicitly represented that they held a cognizable interest such that Plaza was automatically stayed from taking action to collect on the note or to foreclose on the property under South Carolina law. Now, Debtors disclaim any interest in the South Carolina property but, nevertheless, seek the continued protection of the automatic stay. Debtors either have a protectable interest in the South Carolina property such that they should be shielded by the automatic stay or they have improperly weaponized the automatic stay to protect Mr. Strzalkowski, a non-debtor third party.

The Amended Plan continues this artifice. Under the terms of the Amended Plan, Mr. Waycaster will make monthly payments of $1,445 on the South Carolina property note through the Trustee. [Dkt. No. 37, p. 4 of 14] Even assuming that these monthly payments will be timely and fully funded by Mr. Strzalkowski, something that the Amended Plan does not reflect and that recent history does not bear out, Debtors also propose to pay the $17,445 arrearage on the mortgage note over the 60 month life of the Amended Plan. *Id.* The secured creditor will be prohibited from taking action to collect on the arrearage. 11 U.S.C. § 524(a)(3). This treatment might be permissible if Debtors have an interest in the South Carolina property, 11 U.S.C. § 1322(b)(5), but Debtors' Amended Plan disavows any interest in the South Carolina property in order to exclude it for purposes of the Best Interest of Creditors Test. Again, either Debtors have a protectable interest in the South Carolina property such that they should have the benefit of §

1322(b)(5), or, despite all documentation to the contrary, they do not have an interest in the property but have chosen to use this bankruptcy case to provide an undeserved benefit to a non-debtor third party. Debtors cannot have it both ways. They are, therefore, judicially estopped from asserting the existence of a resulting trust in favor of Mr. Strzalkowski.

## Conclusion

Based upon the forgoing, the Trustee's objection to Debtors' Amended Plan is sustained, and confirmation of Debtors' Amended Plan is DENIED.

**Signed on November 18, 2020**



/s/ Joel D. Applebaum

**Joel D. Applebaum**
**United States Bankruptcy Judge**